# In the United States Court of Federal Claims

No. 18-215C
Filed: August 29, 2018
NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| BTR ENTERPRISES OF SC, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Contract Disputes Act; RCFC 12(b)(1); |
| | ) | Subject-Matter Jurisdiction; Termination |
| v. | ) | for Convenience; Bad Faith. |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Mark H. Wilson*, Counsel of Record, Whitcomb, Selinsky, McAuliffe, PC, Denver, CO, for plaintiff.

*Sean L. King*, Trial Attorney, *Patricia M. McCarthy*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, BTR Enterprises of SC, LLC ("BTR"), brings this Contract Disputes Act ("CDA") action challenging the United States Marshals Service's ("USMS") decision to terminate for convenience BTR's contract to provide certain towing and storage services for seized vehicles (the "Storage Contract"). *See generally* Am. Compl.; 41 U.S.C. §§ 7101-7109. As relief, BTR seeks to recover $54,174.17 in monetary damages from the United States. Am. Compl. at Prayer for Relief.

The government has moved to dismiss this action for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. For the reasons discussed below, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the amended complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this Contract Disputes Act action, BTR challenges the USMS's decision to terminate for convenience its contract to provide certain towing and storage services for seized vehicles. *See generally* Am. Compl.  Specifically, BTR alleges in the amended complaint that the USMS wrongfully terminated the Storage Contract, when the agency confiscated vehicles that had been stored by BTR without first providing BTR with a written cure notice.  Am. Compl. at ¶¶ 5, 32.

BTR also asserts that the USMS's decision to terminate the Storage Contract for convenience was motivated by bad faith, resulting in a breach of the contract.  *Id*. at ¶¶ 22, 31. In this regard, BTR alleges that the government's bad faith is evidenced by, among other things, the government's decision to terminate the Storage Contract for convenience only nine days after BTR refuted the deficiencies alleged in the government's cure notice.  *Id.* at ¶ 31.  BTR further contends that the USMS's termination for convenience did not comply with Section 8.406-5(b) of the Federal Acquisition Regulations ("FAR"), because the USMS did not endeavor to enter into a no-cost settlement with BTR before terminating the Storage Contract.  *Id*. at ¶¶ 22, 31.

As relief, BTR alleges that it is entitled to recover "damages including the loss of anticipated profits."  *Id.* at ¶¶ 30-31.  Specifically, BTR seeks to recover $54,174.17 in monetary damages from the government, which includes:

> The sum certain amount is comprised of $3,775.00 for building improvements; $3,680.00 for the difference between the contracted price and discounted price charged to relocate 23 vehicles from the prior contractor's site to BTR's storage facility; $304.17 for wheel dollies to precipitate movement of the 23 vehicles; $17,415.00 for attorney fees; and $20,000.00 in lost profits.

Am. Compl. at ¶ 4.  BTR also seeks to recover $7,500.00 in monetary damages for certain outstanding lease payments.  Pl. Ex. at 3; Def. Mot. at 2; Def. Ex. A at 14.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the amended complaint ("Am. Compl."); the government's motion to dismiss ("Def. Mot.") and the exhibits attached thereto ("Def. Ex. A"); and the exhibits to the original complaint ("Pl. Ex.").  Unless otherwise noted, the facts recited herein are undisputed.

1.      **The Storage Contract**

As background, BTR and the USMS entered into the Storage Contract for the towing, storage, maintenance, and disposal of seized and forfeited vehicles on July 12, 2016.  Am. Compl. at ¶ 16; Def. Mot. at 1-2.  Pursuant to the terms of the Storage Contract, BTR agreed to store the seized vehicles at its facility located at 5416 Highway 39, Mountville, South Carolina. Def. Mot. at 3.

On July 21, 2016, BTR met with the USMS contracting officer's representative at another BTR facility located at 2605 Hwy/221 E. Greenwood, South Carolina (the "Burton Center Facility").  *Id.*; Am. Compl. at ¶ 17.  Although the USMS did not approve the use of the Burton Center Facility for the storage of vehicles, BTR used the Burton Center Facility to store seized vehicles.  Def. Mot. at 2-3.

After BTR began work under the Storage Contract, the Federal Bureau of Investigation ("FBI") arrested the president of BTR, Brian T. Roberts, on charges of extortion, obstruction of justice, and witness tampering.  Def. Mot. at 2.  According to the FBI, Mr. Roberts improperly used photographs and official documents related to the vehicles stored by BTR.  *Id.*

On September 22, 2016, the USMS confiscated all of the vehicles that BTR stored at the Burton Center Facility.  *Id.*; Am. Compl. at ¶ 19.  On that same date, the USMS issued a cure notice to BTR that stated that BTR materially breached the Storage Contract by, among other things, failing to "keep confidential information related to the seizure/forfeiture of vehicles" and failing to ensure that all prospective BTR employees involved with work on the Storage Contract did not have a criminal history.  Def. Mot. at 2.  The cure notice also stated that BTR breached the Storage Contract by storing the seized vehicles at a facility that the USMS had not approved for use to store vehicles.  *Id.*  The USMS further informed BTR that it would terminate the Storage Contract for cause, unless the identified conditions were cured within ten days.  *Id.*; Am. Compl. at ¶ 20.

BTR timely responded to the government's cure notice on October 3, 2016.  Am Compl. at ¶ 21; Def. Mot. at 2.  On October 12, 2016, the USMS contracting officer terminated the Storage Contract for the government's convenience.  Am. Compl. at ¶ 22; Def. Mot. at 2.

2.      **BTR's CDA Claim**

On May 26, 2017, BTR submitted a CDA claim to the USMS contracting officer.  Am.

Compl. at ¶ 24; Def. Mot. at 2.  BTR's CDA claim states, in relevant part, that:

> BTR Enterprises . . . submits this dispute and claim for the payment of $15,775.00,
> a certain sum in accordance with the [CDA] . . . .  This claim is based on the award
> of the subject Contract to BTR on August 1, 2016 and the government's termination
> of the award on October 12, 2016. . . .

Def. Ex. A at 2.  The CDA claim also expresses concerns about the USMS's decision to

confiscate vehicles stored by BTR without prior written notice.  In this regard, the CDA claim

states that:

> [O]n or about September 22, 2016, the vehicles stored by BTR in accordance with
> the contract were confiscated by the government, essentially terminating the
> contract without prior written cure notice being given as required by FAR
> 12.403(c).  A cure notice, dated September 22, 2016, was signed by the Contracting
> Officer (CO) the same day as the USMS vehicles were confiscated from BTR
> property. . . . The cure notice indicated that failure to correct the alleged deficiencies
> within 10-days could result in the Government terminating the contract for cause
> in accordance with [FAR] 52.212-4 . . . . BTR responded to the alleged deficiencies
> in a timely manner . . . .

*Id*.

In addition, the CDA claim states that the USMS wrongfully terminated the Storage

Contract for convenience without first endeavoring to reach a settlement agreement with BTR, in

violation of FAR 8.406-5(b).  *Id*.  In this regard, the CDA claim states that:

> [T]he Contracting Officer issued a Termination for Convenience Notice effective
> October 12, 2016.  This Termination for Convenience Notice was non-compliant
> with the FAR, specifically section 8.406-5(b) which states, "Before terminating
> orders for the Government's convenience, the ordering activity contracting officer
> shall endeavor to enter into a "no cost" settlement agreement with the contractor."

> Because of the Termination, BTR has identified costs it has incurred in furtherance
> of the contract that were not invoiced prior to the Termination or that were
> reoccurring and cannot be fully absorbed because of the Termination . . . . Payment
> of the claimed costs will fairly and reasonably compensate BTR for the costs it
> incurred on behalf of the Government up to the date of termination and for
> preparing this claim.

*Id.* at 2-3.  And so, BTR's CDA claim seeks to recover certain "incurred costs and profits on

work performed," including:  (1) $3,775.00 for "storage facility alterations" at the Burton Center

4

Facility; (2) $7,500.00 for the lease of the Burton Center Facility; and (3) $4,500.00 in attorney fees.  *Id.* at 3-4.

On August 21, 2017, the USMS contracting officer issued a final decision denying BTR's CDA claim because BTR failed to demonstrate that its damages were a direct result of the government's termination for convenience.  Am. Compl. at ¶ 2; Pl. Ex. at 2-5.

### B.    Procedural History

BTR commenced this action on February 13, 2018.  *See generally* Compl.  On May 16, 2018, BTR filed an amended complaint.  *See generally* Am. Compl.

On May 16, 2018, the government filed a motion to dismiss the complaint for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1).  *See generally* Def. Mot.  On May 17, 2018, the government filed a supplement to its motion to dismiss to address the amended complaint.  *See generally* Def. Supp. Mot.

On June 13, 2018, BTR filed a response and opposition to the government's motion to dismiss.  *See generally* Pl. Resp.  On June 27, 2018, the government filed a reply in support of its motion to dismiss.  *See generally* Def. Reply.

The government's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1).  But, plaintiff bears the burden of establishing subject-matter jurisdiction, and it must do so by a preponderance of the evidence.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim."  *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act is, however, a jurisdictional statute; "it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (alterations original). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

B.       **The Contract Disputes Act**

The Tucker Act provides that this Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of Title 41 [the Contract Disputes Act], . . . on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2); *see also Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378, 386 (2006). And so, to establish jurisdiction in a Contract Disputes Act matter, a plaintiff must demonstrate compliance with the requirements of the CDA.

In this regard, the CDA requires that all claims made by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a final decision. 41 U.S.C. § 7103(a); *Northrop Grumman Computing Sys., Inc. v.*

*United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013) ("A prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a *final decision* by a contracting officer on a *valid claim*.") (emphasis original); *see also Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359 (Fed. Cir. 2018).  If the claim made by the contractor is for more than $100,000.00, the contractor must also certify the claim.  41 U.S.C. § 7103(b)(1).  The contractor's claim submission and the requirement that the contracting officer render a final decision on the claim are mandatory and jurisdictional prerequisites before a contractor can file suit in this Court.  *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (stating that "for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision") (citing *James M. Ellett Constr. Co., v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).  The absence of a sum certain for monetary claims submitted pursuant to the CDA is also fatal to jurisdiction.  *Northrop*, 709 F.3d at 1112; *accord M. Maropakis Carpentry*, 609 F.3d at 1327-29.

While the CDA does not define the term "claim," the FAR defines a "claim" as follows:

> Claim . . . means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract.

FAR 52.233-1(c).  In addition, the CDA permits a contractor to file a direct action disputing the contracting officer's final decision in this Court within 12 months of receiving the final decision, if a valid CDA claim has been submitted to the contracting officer.  41 U.S.C. § 7104(b)(3).  A contractor may also seek review in this Court if the contracting officer fails to respond to a CDA claim within 60 days.  41 U.S.C. § 7103(f).  But, "once a claim is in litigation, the contracting officer may not rule on it—even if the claim . . . was not properly submitted to and denied by the contracting officer before it was placed in litigation."  *K-Con Bldg. Sys.*, *Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015).

Specifically relevant to this dispute, the Federal Circuit has held that when a contractor seeks review in this Court, jurisdiction is only proper if the appeal of a decision on a CDA claim is "'based on the same claim previously presented to and denied by the contracting officer.'" *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (quoting *Cerberonics,*

*Inc. v. United States*, 13 Cl. Ct. 415, 417 (1987)); *see also Simulation Tech., LLC v. United States*, 103 Fed. Cl. 105, 108 (2012).  While a CDA claim need not follow a set form, the claim must provide the contracting officer with adequate notice of the basis for, and amount of, any claim.  *M. Maropakis Carpentry*, 609 F.3d at 1328; *see also Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) (stating that the claim must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim").  And so, if a complaint sets forth a new claim, or a claim that differs in scope from what was previously presented to the contracting officer, the Court will not possess jurisdiction over the claim.  *Santa Fe Eng'rs v. United States*, 818 F.2d 856, 859 (Fed. Cir. 1987); *see also AAB Joint Venture v. United States*, 75 Fed. Cl. 414, 422-23 (2007).

In this regard, when a contractor's claim in this Court differs from the claim previously presented to the contracting officer, jurisdiction generally depends upon whether the claim alleged in the complaint is based upon "the same set of operative facts underlying the claim presented to the contracting officer."  *Cerberonics*, 13 Cl. Ct. at 417; *see also Scott Timber*, 333 F.3d at 1365.  In *Renda Marine*, the Court identified three considerations that should be examined to determine whether the Court possesses jurisdiction under such circumstances:  (1) whether the claim is based on the same common or related set of operative facts brought before the contracting officer; (2) whether the legal theory underlying the claim remains the same as presented to the contracting officer; and (3) whether the complaint requests the same relief as requested from the contracting officer.  *Renda Marine, Inc.*, 71 Fed. Cl. at 388-89 (citation omitted); *see also Manuel Bros., Inc. v. United States*, 55 Fed. Cl. 8, 33 (2002), *aff'd*, 95 F. App'x 344 (Fed. Cir. 2004); *Johnson Controls World Servs., Inc. v. United States*, 43 Fed. Cl. 589, 594 (1999).

The Federal Circuit has also addressed how the Court should compare a claim presented to a contracting officer with a claim brought in this Court in *Reliance Ins. Co. v. United States*, 931 F.2d 863 (Fed. Cir. 1991) and *Scott Timber Co.*, 333 F.3d 1358.  In *Reliance*, the Federal Circuit held that this Court did not possess subject-matter jurisdiction to consider a CDA claim for breach of contract and the duty of good faith, because the contractor in that case had not previously presented a clear and unequivocal claim that the government breached the contract or the duty of good faith to the contracting officer.  *Reliance Ins. Co.*, 931 F.2d at 866 (citations omitted); *see also E & E Enters Global, Inc. v. United States*, 120 Fed. Cl. 165, 174 (2015).  But,

the Federal Circuit recognized in *Scott Timber* that there could be some acceptable variance between the "exact language and structure" of a claim before the contracting officer and a claim brought before this Court. *Scott Timber*, 333 F.3d at 1365. In this regard, the Federal Circuit held in *Scott Timber* that the jurisdictional requirement that a CDA claim must be "based on the same claim previously presented to and denied by the contracting officer" does not require rigid adherence to the exact language or structure of the original administrative CDA claim. *Id.* And so, the Federal Circuit concluded the Court could exercise jurisdiction over the CDA claims at issue in *Scott Timber*, because the claims before the contracting officer and the claims in the complaint arose from the same operative facts, sought essentially the same relief, and merely asserted slightly different legal theories for that recovery. *Id.* at 1366; *see also Contract Cleaning*, 811 F.2d at 592 ("All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.").

### C.    Terminations For Convenience And Bad Faith

Lastly, it is well-established that the government has the right to terminate a government contract for its sole convenience without causing a breach of the contract. *See* 48 C.F.R. § 52.212-4(l); *Praecomm, Inc. v. United States*, 78 Fed. Cl. 5, 10-11 (2007), *aff'd*, 296 F. App'x 929 (Fed. Cir. 2008). But, the government may not terminate a contract for convenience in bad faith. *Krygoski Const. Co. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996).

When the government terminates a contract for convenience, the contractor must immediately stop all work. 48 C.F.R. § 52.212-4(l). This Court has also recognized that the sum due to a contractor following a termination for convenience "is significantly circumscribed." *Praecomm*, 78 Fed. Cl. at 12. And so, a contractor may be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus any reasonable charges resulting from the termination that the contractor can demonstrate. *Id.* But, anticipatory profits and consequential damages are not recoverable under such circumstances. *Id.*; 48 C.F.R. §§ 49.202(a), 52.249-1 through -5.

When tainted by bad faith, the government's termination for convenience causes a contract breach. *Krygoski Const. Co.*, 94 F.3d at 1541. And so, when a contractor can show that the government acted in bad faith in terminating a contract for convenience, a contractor may

recover a wider range of damages, including anticipatory profits.  *Id.* at 1540-41; *TigerSwan, Inc.*
*v. United States*, 110 Fed. Cl. 336, 345 (2013) ("If a contractor can demonstrate that the agency's
termination for convenience was improper, the contractor will not be limited to damages
identified in the termination for convenience clause.  In such a case, traditional common law
damages for breach of contract will be available to the contractor.").

The Federal Circuit has held that a high burden must be carried to overcome the
presumption that government officials act in good faith to prove that a termination for
convenience was made in bad faith.  *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d
1234, 1239 (Fed. Cir. 2002).  To that end, a party alleging that a government official acted in bad
faith must overcome the presumption of good faith with "well-nigh irrefragable" proof, meaning
that the evidence of bad faith cannot be refuted or disproved and the evidence is incontrovertible,
incontestable, indisputable, irrefutable, and undeniable.  *Id.* at 1239-40.

## IV.    LEGAL ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction
upon the ground that BTR failed to submit a clear and unequivocal termination for convenience
based upon bad faith claim to the USMS contracting officer prior to commencing this action.
Def. Mot. at 5; Def. Supp. Mot. at 1-2.  Specifically, the government argues in its motion to
dismiss that the amended complaint alleges "a sufficiently distinct legal theory and different
operative facts that were never submitted to the contracting officer."  Def. Mot. at 5.  The
government also argues that BTR failed to state an accurate sum certain in the claim submitted to
the contracting officer.  *Id.* at 8-9.  And so, the government requests that the Court dismiss
BTR's claim for lack of subject-matter jurisdiction.  *Id.* at 9.

BTR counters in its response and opposition to the government's motion to dismiss that it
submitted a termination for convenience motivated by bad faith claim to the USMS contracting
officer, because BTR has "alleged identical operative facts illustrating the harm done to it by the
government" in both the CDA claim and the amended complaint.  Pl. Resp. at 5-6.

For the reasons discussed below, the Court agrees with the government that BTR did not
clearly and unequivocally submit a claim for termination for convenience motivated by bad faith
to the USMS contracting officer and that BTR's CDA claim also does not state an accurate sum

certain.  And so, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the amended complaint.  RCFC 12(b)(1).

### A.    BTR Failed To Submit A Clear And Unequivocal Claim For Termination For Convenience Motivated By Bad Faith To The Contracting Officer

As an initial matter, the undisputed facts in this case show that BTR did not submit a clear and unequivocal claim for termination for convenience motivated by bad faith to the USMS contracting officer.  And so, the Court does not possess subject-matter jurisdiction to consider BTR's CDA claim.

It is well-established that jurisdiction is only proper in this Court if the appeal of a contracting officer's final decision on a CDA claim is "'based on the same claim previously presented to and denied by the contracting officer.'"  *Scott Timber*, 333 F.3d at 1365 (quoting *Cerberonics*, 13 Cl. Ct. at 417); *see also Simulation Tech.*, 103 Fed. Cl. at 108.  And so, if a complaint sets forth a new claim—or a claim that differs in scope from what was previously presented to the contracting officer—the Court will not possess jurisdiction over the claim. *Santa Fe Eng'rs*, 818 F.2d at 859; *see also AAB Joint Venture*, 75 Fed. Cl. at 422-23.

While a CDA claim need not follow a set form, such a claim must provide the contracting officer with adequate notice of the basis for, and amount of, any claim.  *M. Maropakis Carpentry*, 609 F.3d at 1328; *see also Contract Cleaning*, 811 F.2d at 592.  Given this, jurisdiction generally depends upon whether the claim in the complaint is based upon "the same set of operative facts underlying the claim presented to the contracting officer." *Cerberonics*, 13 Cl. Ct. at 417; *see also Scott Timber*, 333 F.3d at 1365.

The Court considers three factors to determine whether its possesses subject-matter jurisdiction to consider BTR's CDA claims here:  (1) whether the claim is based on the same common or related set of operative facts brought before the contracting officer; (2) whether the legal theory underlying the claim remains the same as presented to the contracting officer; and (3) whether the complaint requests the same relief as requested from the contracting officer. *Renda Marine, Inc.*, 71 Fed. Cl. at 388-89; *see also Manuel Bros.*, 55 Fed. Cl. at 33; *Johnson Controls*, 43 Fed. Cl. at 594.  Each of these factors weigh in favor of granting the government's motion to dismiss in this case.

### 1. The CDA Claim And Amended Complaint Are Not Based Upon The Same Operative Facts

First, a careful review of the amended complaint and BTR's CDA claim makes clear that these two claims are not based upon the same common or related set of operative facts. In the amended complaint, BTR alleges that it is entitled to "damages including the loss of anticipated profits," due to the government's alleged termination of the Storage Contract for convenience motivated by bad faith. Am. Compl. at ¶¶ 29-31. As this Court recognized in *Renda Marine*, "'[o]perative facts are the essential facts that give rise to a cause of action.'" *Renda Marine, Inc.*, 71 Fed. Cl. at 389 (quoting *Kiewit Constr. Co. v. United States*, 56 Fed. Cl. 414, 420 (2003)). And so, the operative facts to support a claim that the government acted in bad faith by terminating the Storage Contract are facts that demonstrate the government's specific intent to injure BTR. *See Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed. Cir. 1995).

In this case, the amended complaint contains operative facts to show bad faith upon the part of the USMS. For example, BTR alleges in the amended complaint that the government "issued the pretext [of] termination for convenience" after the Storage Contract had already been effectively terminated by the confiscation of stored vehicles on September 22, 2016. *Id*. at ¶¶ 31-32. BTR also alleges in the amended complaint that the USMS contracting officer "arbitrarily and in bad faith issued a Termination for Convenience Notice effective October 12, 2016." Am. Compl. at ¶ 22. In addition, BTR alleges that it can recover "$20,000.00 in lost profits," and alleges that it "is entitled to the loss of anticipated profits because the termination for convenience is motivated by bad faith." Am. Compl. at ¶¶ 4, 31. And so, the amended complaint attempts to address a specific intent upon the part of the USMS to injure BTR by terminating the Storage Contract.

In contrast, a reading of BTR's CDA claim shows that this claim is essentially devoid of any operative facts to support a claim for breach of contract based upon a termination for convenience motivated by bad faith. *See generally id*. In the CDA claim, BTR states that its claim "is based on the award of the subject Contract to BTR on August 1, 2016 and the government's termination of the award on October 12, 2016." Def. Ex. A at 2. There is certainly some overlap between the factual allegations in BTR's CDA claim and amended complaint—specifically regarding the USMS's decision to effectively terminate the Storage Contract by confiscating vehicles without a prior written cure notice and the government's

decision to terminate the Storage Contract for convenience without first endeavoring to reach a settlement agreement with BTR.  Pl. Resp. at 6-8.  But, BTR's CDA claim does not mention bad faith or a "pretext termination for convenience," nor does the CDA claim contain any facts to specifically show that the USMS had a specific intent to injure BTR by terminating the Storage Contract.  *See generally* Def. Ex. A at 2-5.  Given this, the two claims are not based upon a common or related set of operative facts.

### 2.      The Legal Theories Underlying BTR's Claims Differ

More importantly, a review of BTR's CDA claim and the amended complaint also makes clear that the legal theories for these two claims are distinct.  It is well-established that the government has the right to terminate a government contract for its sole convenience without causing a breach of the contract and that, when the government does so, the sum due to a contractor "is significantly circumscribed."  *See Praecomm, Inc.*, 78 Fed. Cl. at 10-12; *see also* 48 C.F.R. § 52.212-4(l).  But, when tainted by bad faith, the government's termination for convenience causes a contract breach and a contractor may recover a wider range of damages, including anticipatory profits.  *Krygoski*, 94 F.3d at 1540-41; *TigerSwan*, 110 Fed. Cl. at 345.

In this case, the amended complaint clearly states that BTR alleges a termination for convenience motivated by bad faith claim, resulting in the breach of the Storage Contract.  Am. Compl. at ¶ 31.  And so, as discussed above, BTR seeks to recover, among other things, lost profits in the amount of $20,000.00—damages that BTR could only recover in the event of the government's breach of the Storage Contract.  *Id*. at ¶ 4; *Krygoski*, 94 F.3d at 1540-41; *TigerSwan*, 110 Fed. Cl. at 345; *see generally* Def. Ex. A at 2-5.

BTR's CDA claim does not, however, seek to recover lost profits.  *See generally* Def. Ex. A at 14.  Rather, BTR seeks to recover only the "incurred costs and profits on work performed" under the Storage Contract, which is consistent with a claim for termination for convenience that would not involve a breach of the Storage Contract.  Def. Ex. A at 3.  Given this, the Court reads the amended complaint and BTR's CDA claim to be based upon different legal theories.[2]

---

[2] The Court is also unpersuaded by BTR's argument that the USMS contracting officer had adequate notice of its termination for convenience motivated by bad faith claim, because BTR's CDA claim states that "the vehicles stored by BTR in accordance with the contract were confiscated by the government, effectively terminating the contract."  Pl. Resp. at 7 (emphasis removed).  While certainly relevant to the issue of bad faith, this factual allegation, alone, does not show that the government acted with specific

### 3.    BTR's Claims Do Not Seek The Same Relief

Lastly, a careful reading of the amended complaint and BTR's CDA claim also shows that BTR does not seek the same relief in the two claims.  While the amount that BTR seeks to recover in this action need not be identical to the amount requested in its CDA claim, a change in the amount requested should not change the fundamental character of BTR's claim.  *Contract Cleaning*, 811 F.2d at 591-92 (requiring plaintiff to give the contracting officer notice of basis and amount of claim).

In this case, there can be no genuine dispute that the monetary damages that BTR seeks in the amended complaint differ significantly from the damages requested in BTR's CDA claim. In the amended complaint, BTR seeks to recover $54,174.17 in monetary damages—more than three times the amount that BTR requested its CDA claim.  Am. Compl. at ¶ 3.  The nature of the damages that BTR seeks to recover in this litigation also differs from its CDA claim.  BTR states in the amended complaint that:

> The sum certain amount is comprised of $3,775.00 for building improvements; $3,680.00 for the difference between the contracted price and discounted price charged to relocate 23 vehicles from the prior contractor's site to BTR Enterprise's storage facility; $304.17 for wheel dollies to precipitate movement of the 23 vehicles; $17,415.00 for attorney fees; and $20,000.00 in lost profits.

Am. Compl. at ¶ 4.  But, BTR did not seek to recover lost profits in its CDA claim.  Def. Ex. A at 2-5; Pl. Resp. at 3; Def. Reply at 4-5.  Nor did BTR request the costs that it now seeks to relocate 23 vehicles from the prior contractor's site to BTR's storage facility ($3,680.00) and for wheel dollies ($304.17).  Def. Ex. A at 3-4; Pl. Resp. at 3.

Because BTR's CDA claim and the amended complaint are not based upon the same set of common or related operative facts, involve different legal theories, and seek different monetary relief, BTR simply has not provided clear and unequivocal notice to the USMS contracting officer of its claim that the government breached the Storage Contract by terminating that contact for convenience in bad faith.  And so, the Court must dismiss BTR's CDA claim for lack of subject-matter jurisdiction.  RCFC 12(b)(1).

---

intent to injure BTR by terminating the Storage Contract. *See Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed. Cir. 1995).

**B.      BTR Failed To State A Sum Certain In Its CDA Claim**

As a final matter, while the Court need not reach this issue, a review of BTR's CDA claim and the amended complaint also shows that BTR did not submit a sum certain for the total amount of its claim to the contracting officer.  The absence of a sum certain in BTR's CDA claim is also fatal to BTR's effort to invoke the Court's jurisdiction.  *Northrop*, 709 F.3d at 1112; *accord M. Maropakis Carpentry*, 609 F.3d at 1327-29.

As discussed above, BTR seeks to recover $54,174.17 in monetary damages in this action—more than three times the amount sought in its CDA claim.  BTR acknowledges in its response and opposition to the government's motion to dismiss that it submitted a "partial dollar amount" to the contracting officer and that its "present claim is not entirely the same as its [CDA] claim submitted to the contracting officer."  Pl. Resp. at 6.  Given this, the Court agrees with the government that BTR did not submit a claim for a sum certain to the USMS contracting officer for the costs that it seeks to recover in this action.  And so, the Court must also dismiss BTR's CDA claim because BTR failed to submit a sum certain for the total amount of its claim to the USMS contracting officer.  RCFC 12(b)(1).

**V**.      **CONCLUSION**

In sum, BTR failed to present a clear and unequivocal claim for breach of contract based upon a termination for convenience motivated by bad faith to the contracting officer prior to commencing this action.  BTR also failed to submit an accurate and complete sum certain to the contracting officer for the total amount of its claim.  Both of these failures are jurisdictionally fatal to BTR's CDA claim.

And so, for the reasons discussed above, the Court:

1.  **GRANTS** the government's motion to dismiss; and

2.  **DISMISSES** the amended complaint.  RCFC 12(b)(1).

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge